WILLIAM M. NARUS, CAB # 243633
Acting United States Attorney
District of Oregon
**SCOTT M. KERIN, OSB # 965128**
Assistant United States Attorney
Scott.Kerin@usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 3:23-cr-266-IM |
| v. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **JORGE JAIR ALAS-AVILA,** | |
| **Defendant.** | |

The government asks the Court to sentence defendant to 30 months' imprisonment, to be followed by a three-year term of supervised release. The U.S. Probation Office concurs in this recommendation.

**A.     Summary of Proceedings.**

On January 31, 2025, defendant pled guilty to Count 1 of his Indictment which charged him with Possession with Intent to Distribute Fentanyl, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A). The maximum sentence the Court may impose is a term of life imprisonment, fine

of $10,000,000, and at least five years of supervised release. There is a potential mandatory minimum sentence of ten years' imprisonment. There is also a $100 fee assessment.

A Presentence Report (PSR) has been completed. The government believes that the facts underlying the defendant's count of conviction, his Sentencing Guideline calculations, his criminal history, and his personal history and characteristics are accurately laid out in both the PSR and his plea agreement. In his plea agreement defendant admitted that:

> [H]e worked as a drug courier for a larger drug trafficking organization. On or about July 19, 2023, law enforcement investigators, after receiving information from an informant that a drug trafficking organization had send a courier with a load of fentanyl from California to Portland, Oregon, were able to locate the suspected load vehicle in the area of 1300 S.W. Park, by Portland State University, in downtown Portland, Oregon. The car was parked on the side of street. A drug detection K-9 was run by vehicle and alerted to the car, indicating the presence of controlled substances inside. As the K-9 alerted on the vehicle, defendant got out of car and was detained. A state search warrant was obtained and executed on the vehicle and investigators found approximately eight (8) kilograms of fentanyl powder, four (4) kilograms (about 40,000 pills) of counterfeit M30 fentanyl pills, four (4) kilograms of Mannitol, and a digital scale. Law enforcement investigators would also testify that the amount of fentanyl seized indicted that it was possessed for purposes of further distribution. Investigators would also testify that Mannitol is used to "cut" (mix with) fentanyl for purposes of further distribution. Fentanyl is a Schedule II controlled substance.

Plea Agreement ¶ 6.

A picture of the seized fentanyl is below:

///

///

///



Criminal Complaint ¶ 15.

**B.    Sentencing Guideline Calculations.**

The Court, "in determining the particular sentence to be imposed," is required to consider the "sentencing range established" by the U.S. Sentencing Guidelines. 18 U.S.C. § 3553(a)(4). "The Guidelines are 'the starting point and the initial benchmark,'... and are to be kept in mind throughout the process." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008)(quoting *Kimbrough v. United States*, 552 U.S. 85, 108 (2007)). "All sentencing proceedings are to begin by determining the applicable Guideline range." *Id*.

The parties agree that defendant's relevant conduct, pursuant to U.S.S.G. §§ 1B1.3 and 2D1.1(a), includes approximately 12 kilograms of fentanyl for an initial Base Offense Level of 36. PSR ¶ 33 and Plea Agreement ¶ 8.

Because defendant satisfies the "safety valve" criteria in 18 U.S.C. § 3553(f) and U.S.S.G. § 2D1.1(b)(18), the government will recommend a two-level downward departure in his Sentencing Guidelines range. PSR ¶ 34 and Plea Agreement ¶ 9.

Based upon the defendant's role in the offense, the government believes the defendant qualifies for a four-level role reduction for conduct that can be described as a minimal participant, pursuant to U.S.S.G. § 3B1.2(a). PSR ¶ 36 and Plea Agreement ¶ 10(A). Should the Court find that the defendant qualifies for a role reduction, pursuant to U.S.S.G. § 3B1.2, the defendant's Base Offense should be decreased by additional three levels, pursuant to U.S.S.G. § 2D1.1(a)(5). PSR ¶ 33 and Plea Agreement ¶ 10(B).

Because defendant qualifies as a "Zero Point Offender," pursuant to U.S.S.G. § 4C1.1, the parties will recommend a two-level downward departure in defendant's Sentencing Guidelines range. PSR ¶ 39 and Plea Agreement ¶ 11.

Based upon defendant's guilty plea and acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, the government will recommend a three-level reduction in defendant's offense level. PSR ¶¶ 40-41 and Plea Agreement ¶ 13.

This investigation and the resulting drug seizure were the direct result of information provided to law enforcement by an informant whose identity the government has sought to keep confidential, both due to informant safety concerns but also due to other ongoing investigations. This case started as a state seizure that was referred to the local District Attorney's Office. The local District Attorney's Office then reached out to the government to consider prosecuting the case, one of their concerns was that the defendant would be released from state custody. After speaking with the law enforcement agencies involved, the government was willing to take the

case, and make additional concessions to resolve the case, in an effort to ensure the defendant was held in custody, prosecuted, and eventually deported, while not having to disclose or risk the disclosure of the informant. Thus, pursuant to 18 U.S.C. § 3553(a), based upon the history and characteristics of the defendant, the defendant's resolution of the case without seeking the disclosure of the informant that formed the basis of locating the defendant, and the nature of the instant offense, and to achieve a fair and just resolution of the case, the government will recommend that the Court to grant the defendant a three-level downward variance in his overall offense level. Plea Agreement ¶ 13. The PSR also incorporates an equivalent downward variance in their independent sentencing recommendation. PSR Sentencing Recommendation at *1.

Based upon the government's guideline calculations, to include the 3553(a) variance, we believe the defendant's adjusted Offense Level is 19 and, with a Criminal History Category of I, an advisory sentencing guideline range of 30 to 37 months' imprisonment.

Defendant has been in custody on this matter since July 19, 2023, when he was arrested.

**C.    Government's Recommended Sentence.**

Pursuant to 18 U.S.C. § 3553(a), we ask the Court to sentence defendant to 30 months' imprisonment, to be followed by a three-year term of supervised release.

Defendant's crime is extremely serious. As a courier for a drug trafficking organization the defendant was involved in transporting fentanyl – an incredibly addictive, destructive, and deadly drug – from California into Portland, Oregon for purposes of further distribution. Here, given the prompt actions by law enforcement this fentanyl never hit the streets of Portland, this

courier was arrested, he was held in custody, he was prosecuted, and following his sentence he is facing deportation back to Honduras.

Accordingly, after evaluating the competing sentencing factors outlined in 18 U.S.C. § 3553(a) which include the nature and circumstances of the offense; the defendant's characteristics; the need for the sentence imposed to reflect the seriousness of the offense; the need for the sentence to promote respect for the law; the need for the sentence to afford adequate deterrence to criminal conduct; the need for the sentence to provide just punishment for the offense; the need to protect the public from further crimes of the defendant; and, the need to provide the defendant with needed training or other corrective treatment, we believe a sentence of 30 months' imprisonment is reasonable. We ask the Court to impose it, to be followed by a three-year term of supervised release.

There are no charges to be dismissed. There is an appeal waiver.

Dated: April 28, 2025.                                Respectfully submitted,

                                                      WILLIAM M. NARUS
                                                      Acting United States Attorney

                                                      /s/ *Scott Kerin*
                                                      SCOTT M. KERIN, OSB # 965128
                                                      Assistant United States Attorney